**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | **Case No.: 20-20328** |
| **Brian C. Carey** | : | **Chapter 13** |
| | : | **Judge Jeffery A. Deller** |
| **Debtor(s)** | : | * * * * * * * * * * * * * * * * * * |
| | : | |
| | : | |
| **Nationstar Mortgage LLC** | : | **Date and Time of Hearing** |
| **Movant,** | : | **Place of Hearing** |
| | : | **July 16, 2024 at 10:00 a.m.** |
| **vs** | : | |
| | : | |
| **Brian C. Carey** | : | **Related Docket #70** |
| **Ronda J. Winnecour** | : | |
| **Respondents.** | : | **Courtroom D, 54th Floor, U.S. Steel Tower** |
| | : | **600 Grant Street, Pittsburgh, PA 15219** |

**COVERSHEET FOR REFILING OF MFR EXHIBITS (MFR DOCUMENT #70)**

I certify under penalty of perjury that I served the above captioned pleading on the parties at the addresses specified below or on the attached list on (date) 06/26/2024
.

The type(s) of service made on the parties (first-class mail, electronic notification, hand delivery, or another type of service) was: first-class mail and electronic notification
.

If more than one method of service was employed, this certificate of service groups the parties by the type of service. For example, the full name, email address, and where applicable the full name of the person or entity represented, for each party served by electronic transmission is listed under the heading "Service by NEF," and the full name and complete postal address for each party served by mail, is listed under the heading "Service by First-Class Mail."

EXECUTED ON: 06/26/2024

By: /s/Alyk L. Oflazian
Signature
Alyk L. Oflazian, Esquire
Typed Name
P.O. Box 165028, Columbus, OH 43216-5028
Address

24-000048_EJS1

614-220-5611
Phone No.

312912
List Bar I.D. and State of Admission

Alyk L. Oflazian, Attorney for Creditor, Manley Deas Kochalski LLC, P.O. Box 165028, Columbus, OH  43216-5028 (notified by ecf)

Office of U.S. Trustee, Party of Interest, (Registered address)@usdoj.gov (notified by ecf)

Ronda J. Winnecour, Chapter 13 Trustee, Suite 3250, USX Tower, 600 Grant Street, Pittsburgh, PA  15219, cmecf@chapter13trusteewdpa.com (notified by ecf)

Daniel R. White, Attorney for Debtor, Tremba, Kinney, Greiner & Kerr, LLC, 1310 Morrell Avenue, Suite C, Connellsville, PA  15425, dwhite@westpalawyers.com (notified by ecf)

Brian C. Carey, Debtor, 203 River Avenue, Masontown, PA  15461 (notified by regular US Mail)

24-000048_EJS1

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

> **EXHIBIT**
> **A**

# NOTE

NOVEMBER 17, 2017        IRVING        TEXAS
[Date]        [City]        [State]

203 RIVER AVE, MASONTOWN, PENNSYLVANIA 15461
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 122,990.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is PACIFIC UNION FINANCIAL, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.125%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on JANUARY 1, 2018 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on DECEMBER 1, 2047 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

PENSYLVANIA FHA FIXED RATE NOTE
PAFHA.NTE 06/14/16        Page 1 of 5        DocMagic *eForms*
www.docmagic.com

I will make my monthly payments at  P.O. BOX 655621, DALLAS, TEXAS 75265-5621

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 596.07 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

PENSYLVANIA FHA FIXED RATE NOTE
PAFHA.NTE 06/14/16                    Page 3 of 5                    DocMagic eForms
                                                                     www.docmagic.com

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;
(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;
(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;
(d) the Maturity Date as defined in this Note;

PENSYLVANIA FHA FIXED RATE NOTE
PAFHA.NTE 06/14/16                              Page 4 of 5                              DocMagic eForms
                                                                                       www.docmagic.com

(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
BRIAN   CAREY                     -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                        -Borrower

Pay to the order of:
Without Recourse
PACIFIC UNION FINANCIAL, LLC

Barbara Sypow
Senior Executive Vice President

Loan Originator: ROB  LYONS, NMLSR ID ███████
Loan Originator Organization: PACIFIC UNION FINANCIAL, NMLSR ID ███████

*[Sign Original Only]*

PENSYLVANIA FHA FIXED RATE NOTE
PAFHA.NTE  06/14/16                     Page 5 of 5                     DocMagic *eForms*
                                                                       www.docmagic.com

**EXHIBIT B**

3100828130
BE7881                        BI1AE1C
                              Carey, Brian
DEED OF TRUST GINNIEMAE 3100828130

This Instrument Prepared By:
Kaci Trowbridge  Pacific Union Financial LLC
                  1603 LBJ Freeway, Suite 600
                  Farmers Branch, TX 75234

Return to:
. Lenders Title Solutions LLC
25400 US Highway 19 N, Suite 245  L, LLC
Clearwater, FL 33763             B 600
                                 75234

Uniform Parcel Identifier Number:       201800000131
21060132                                LENDERS TITLE SOLUTIONS LLC
Property Address:                       CLEARWATER FL ENV
203 RIVER AVE
MASONTOWN, PENNSYLVANIA 15461

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this
document are also provided in Section 15.

**(A)** "**Security Instrument**" means this document, which is dated     NOVEMBER 17, 2017 ,
together with all Riders to this document.
**(B)** "**Borrower**" is    BRIAN CAREY

Borrower is the mortgagor under this Security Instrument.
**(C)** "**MERS**" is   Mortgage Electronic Registration Systems, Inc.   MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.
**MERS is the mortgagee under this Security Instrument.**   MERS is organized and existing

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA 02/29/16                          Page 1 of 18                  DocMagic *eForms*
                                                                            www.docmagic.com



UPI Certification Date  1 / 2 / 20 18
21 - 06 - 0132 04

under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS.

**(D)** **"Lender"** is PACIFIC UNION FINANCIAL, LLC

Lender is a   CALIFORNIA LIMITED LIABILITY COMPANY                                   organized and existing under the laws of   CALIFORNIA
Lender's address is   8900 FREEPORT PARKWAY, SUITE 150, IRVING, TEXAS 75063

**(E)** **"Note"** means the promissory note signed by Borrower and dated       NOVEMBER 17   ,
2017       . The Note states that Borrower owes Lender   ONE HUNDRED TWENTY-TWO
THOUSAND NINE HUNDRED NINETY AND 00/100                                        Dollars
(U.S. $  122,990.00       ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       DECEMBER 1, 2047   .
**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Condominium Rider           ☐ Other(s) [specify]


**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)** **"Escrow Items"** means those items that are described in Section 3.
**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA  02/29/16                    Page 2 of 18                    DocMagic *eForms*
                                                                        www.docmagic.com

described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

| COUNTY | of | FAYETTE | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 21060132

which currently has the address of

203 RIVER AVE
[Street]

MASONTOWN , Pennsylvania 15461 ("Property Address"):
[City] [Zip Code]

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

ALL THOSE THREE CERTAIN LOTS OF LAND SITUATED IN THE BOROUGH OF MASONTOWN, FORMERLY WEST MASONTOWN, GERMAN TOWNSHIP, FAYETTE COUNTY, PENNSYLVANIA, KNOWN AS LOTS NUMBERED ONE (1), TWO (2), AND THREE (3) IN BLOCK NUMBERED FORTY (40) IN A PLAN OF LOTS AND BLOCKS AS RECORDED IN THE RECORDER'S OFFICE OF SAID COUNTY, BY THE MASONTOWN LAND AND IMPROVEMENT COMPANY, IN PLAN BOOK VOLUME 1, PAGE 204.

EXCEPTING AND RESERVING THE FOLLOWING OUTSALE AS RECORDED IN DEED BOOK VOLUME 140, PAGE 191:

ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATE IN MASONTOWN, FAYETTE COUNTY, PENNSYLVANIA, BEING PART OF LOT NO. THREE (3) IN BLOCK NUMBERED FORTY (40) IN A PLAN OF LOTS AND BLOCKS AS RECORDED IN THE RECORDER'S OFFICE OF FAYETTE COUNTY, BY THE MASONTOWN LAND AND IMPROVEMENT COMPANY, IN PLAN BOOK 1, PAGE 204, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN IN THE NORTHEASTERN CORNER OF LOT FOUR (4), LAND OF THE GRANTEE ON THE SOUTHERN SIDE OF RIVER A VENUE; THENCE ALONG SAID A VENUE SOUTH 68 DEGREES 49 MINUTES EAST 66.79 FEET TO AN IRON PIN A CORNER OF OTHER LAND OF THE GRANTOR; THENCE ALONG SAID LAND SOUTH 21 DEGREES 35 MINUTES WEST 74.59 FEET TO AN IRON PIN; THENCE CONTINUING ALONG GRANTORS LAND SOUTH 89 DEGREES 08 MINUTES WEST 22.84 FEET TO AN IRON PIN; THENCE ALONG SAID LAND SOUTH 1 DEGREE 10 MINUTES EAST 34.16 FEET TO IRON PIN ON THE SOUTH SIDE OF COTTAGE AVENUE; THENCE ALONG SAID AVENUE SOUTH 88 DEGREES 25 MINUTES WEST 9.32 FEET TO AN IRON PIN AT THE SOUTHEASTERN CORNER OF LOT NO. 4, GRANTEES LAND; THENCE ALONG SAME NORTH 1 DEGREE 35 MINUTES WEST 128.36 FEET TO AN IRON PIN ON THE SOUTH SIDE OF RIVER AVENUE, THE PLACE OF BEGINNING, AS SHOWN ON SURVEY BY JOHN P. LOGAN, JR. P.E. A COPY OF WHICH IS RECORDED WITH A CERTAIN DEED INDEED BOOK VOLUME 140, PAGE 191.

EXCEPTING AND RESERVING ALL THE NINE FOOT VEIN OF COAL AND UNDERLYING THE SAID ABOVE LOTS OF LAND, TOGETHER WITH ALL MINING RIGHTS AS EXCEPTED AND RESERVED IN A CERTAIN DEED OF SALLIE WALTERS AND E. T. WALTERS, TO THE SAID MASONTOWN LAND AND IMPROVEMENT COMPANY, DATED JUNE 1, 1901. AND

RECORDED IN THE RECORDER'S OFFICE OF SAID COUNTY IN DEED BOOK 186, PAGE 396, CONVEYING CERTAIN REAL ESTATE OF WHICH THE SAID ABOVE DESCRIEED LOTS OF LAND ARE A PART.

Also known as 203 River Avenue, Masontown, PA  15461

Parcel ID #21060132

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA  02/29/16                                    Page 4 of 18                          DocMagic *eForms*
                                                                                              www.docmagic.com

making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

    First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    Third, to interest due under the Note;

    Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

    **3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the

basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible

---

levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA  02/29/16                          Page 7 of 18                          *DocMagic eForms*
                                                                                    www.docmagic.com

lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

  6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

  7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

  8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate

DocMagic eForms
www.docmagic.com

information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA  02/29/16                           Page 9 of 18                        DocMagic *eForms*
                                                                                    www.docmagic.com

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest

of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated

notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees

incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA  02/29/16                          Page 13 of 18                          DocMagic eForms
                                                                                     www.docmagic.com

removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence,

Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note. "Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BRIAN CAREY          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Witness: _____

Witness: _____

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA  02/29/16

Page 16 of 18

*DocMagic eForms*
*www.docmagic.com*

———————— [Space Below This Line For Acknowledgment] ————————

State of ___PENNSYLVANIA___

County of ___FAYETTE___

   On this the __17th__ day of __November__ __2017__, before me, _____

___Wendy L DeOre___,

the undersigned officer, personally appeared ___BRIAN CAREY___

_____

_____,

known to me (or satisfactorily proven) to be the person whose name __Brian Carey__

subscribed to the within instrument and acknowledged that __Brian Carey__

executed the same for the purposes therein contained.

   In witness whereof I hereunto set my hand and official seal.

_Wendy L DeOre_

_Notary Public_
Title of Officer

**COMMONWEALTH OF PENNSYLVANIA**
NOTARIAL SEAL
Wendy L. DeOre, Notary Public
Dunbar Twp., Fayette County
My Commission Expires May 29, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

     (Seal)

Loan Originator: ROB LYONS, NMLSR ID ███
Loan Originator Organization: PACIFIC UNION FINANCIAL, NMLSR ID ███

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA 02/29/16         Page 17 of 18         DocMagic eForms
www.docmagic.com

20180000131 OR 3360 1824

20180000131
Filed for Record in
FAYETTE COUNTY, PA
TRACIE L. VARGO, RECORDER
01-03-2018 At 08:42 am.
MTGE 134.25
OR Book 3360 Page 1805 - 182*

**Certificate of Residence of Mortgagee**

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is: 1901 E Voorhees Street, Suite C, Danville, IL 61834

Witness my hand this 29 day of December 2017 .

_____
Signature of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

_____
Nydia B. Semancik
Type or Print Name of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

I hearby CERTIFY that this document is recorded in the Recorder's Office of Fayette County, Pennsylvania.

TRACIE L. VARGO
RECORDER OF DEEDS

PENNSYLVANIA FHA MORTGAGE - MERS
PAMTGZ2.FHA 02/29/16                    Page 18 of 18                    DocMagic eForms
www.docmagic.com

2019R00015224
MCCABE WEISBERG & CONWAY LLC
PHILADELPHIA PA ENV

PARCEL NO. 21060132
**PENNSYLVANIA**
COUNTY OF FAYETTE

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH: 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS located at 1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834 or P.O. Box 2026, FLINT, MICHIGAN 48501-2026, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto PACIFIC UNION FINANCIAL, LLC located at 1603 LBJ FREEWAY SUITE 500, FARMERS BRANCH, TX 75234, Assignee, its successors and assigns, that certain Mortgage dated NOVEMBER 17, 2017 executed by BRIAN CAREY, Mortgagor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS, Original Mortgagee, in the amount of $122,990.00 and recorded on JANUARY 03, 2018 in the Office of the Register, Recorder, or County Clerk of FAYETTE County, State of PENNSYLVANIA, in Book 3360 at Page 1805 as Document No. 201800000131, more particularly described and commonly known as:

AS DESCRIBED IN SAID MORTGAGE
Property Address: 203 RIVER AVE, MASONTOWN, PA 15461
BOROUGH OF MASONTOWN

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.
TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.
IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed on JANUARY 29, 2019.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, ("MERS"), AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS

**KAYLA SCHROEDER, VICE PRESIDENT**

STATE OF IDAHO          COUNTY OF BONNEVILLE    ) ss.

On JANUARY 29, 2019, before me, ADDISON RICE, personally appeared KAYLA SCHROEDER known to me to be the VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR PACIFIC UNION FINANCIAL, LLC, ITS SUCCESSORS AND ASSIGNS the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**ADDISON RICE (COMMISSION EXP. 06/15/2024)**
NOTARY PUBLIC

Page 1 of 2

UPI Certification Date 2/19/2019
21-06-0132

Instrument       Book Page
201800000131 OR   3360 1809

Instrument
201900001524 OR

Book Page
3395 1083

RECORDED IN THE RECORDER'S OFFICE OF SAID COUNTY IN DEED BOOK 186, PAGE 396, CONVEYING CERTAIN REAL ESTATE OF WHICH THE SAID ABOVE DESCRIEED LOTS OF LAND ARE A PART.

Also known as 203 River Avenue, Masontown, PA  15461

Parcel ID #21060132

Instrument
201800000131 OR

Book Page
3360 1808

Instrument Page
201900001524 OR

Book Page
3395 1084

## EXHIBIT "A"

### LEGAL DESCRIPTION

ALL THOSE THREE CERTAIN LOTS OF LAND SITUATED IN THE BOROUGH OF MASONTOWN, FORMERLY WEST MASONTOWN, GERMAN TOWNSHIP, FAYETTE COUNTY, PENNSYLVANIA, KNOWN AS LOTS NUMBERED ONE (1), TWO (2), AND THREE (3) IN BLOCK NUMBERED FORTY (40) IN A PLAN OF LOTS AND BLOCKS AS RECORDED IN THE RECORDER'S OFFICE OF SAID COUNTY, BY THE MASONTOWN LAND AND IMPROVEMENT COMPANY, IN PLAN BOOK VOLUME 1, PAGE 204.


EXCEPTING AND RESERVING THE FOLLOWING OUTSALE AS RECORDED IN DEED BOOK VOLUME 140, PAGE 191:


ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATE IN MASONTOWN, FAYETTE COUNTY, PENNSYLVANIA, BEING PART OF LOT NO. THREE (3) IN BLOCK NUMBERED FORTY (40) IN A PLAN OF LOTS AND BLOCKS AS RECORDED IN THE RECORDER'S OFFICE OF FAYETTE COUNTY, BY THE MASONTOWN LAND AND IMPROVEMENT COMPANY, IN PLAN BOOK 1, PAGE 204, BOUNDED AND DESCRIBED AS FOLLOWS:


BEGINNING AT AN IRON PIN IN THE NORTHEASTERN CORNER OF LOT FOUR (4), LAND OF THE GRANTEE ON THE SOUTHERN SIDE OF RIVER A VENUE; THENCE ALONG SAID A VENUE SOUTH 68 DEGREES 49 MINUTES EAST 66.79 FEET TO AN IRON PIN A CORNER OF OTHER LAND OF THE GRANTOR; THENCE ALONG SAID LAND SOUTH 21 DEGREES 35 MINUTES WEST 74.59 FEET TO AN IRON PIN; THENCE CONTINUING ALONG GRANTORS LAND SOUTH 89 DEGREES 08 MINUTES WEST 22.84 FEET TO AN IRON PIN; THENCE ALONG SAID LAND SOUTH 1 DEGREE 10 MINUTES EAST 34.16 FEET TO IRON PIN ON THE NORTH SIDE OF COTTAGE AVENUE; THENCE ALONG SAID AVENUE SOUTH 88 DEGREES 25 MINUTES WEST 9.32 FEET TO AN IRON PIN AT THE SOUTHEASTERN CORNER OF LOT NO. 4, GRANTEES LAND; THENCE ALONG SAME NORTH 1 DEGREE 35 MINUTES WEST 128.36 FEET TO AN IRON PIN ON THE SOUTH SIDE OF RIVER AVENUE, THE PLACE OF BEGINNING, AS SHOWN ON SURVEY BY JOHN P. LOGAN, JR. P.E. A COPY OF WHICH IS RECORDED WITH A CERTAIN DEED INDEED BOOK VOLUME 140, PAGE 191.


EXCEPTING AND RESERVING ALL THE NINE FOOT VEIN OF COAL AND UNDERLYING THE SAID ABOVE LOTS OF LAND, TOGETHER WITH ALL MINING RIGHTS AS EXCEPTED AND RESERVED IN A CERTAIN DEED OF SALLIE WALTERS AND E. T. WALTERS, TO THE SAID MASONTOWN LAND AND IMPROVEMENT COMPANY, DATED JUNE 1, 1901. AND

201700008784
Filed for Recording in
FAYETTE COUNTY, PA
TRACIE L. VARGO, RECORDER
08-29-2017 At 08:11:19am.
ASSIGN MRTGE          779.25
OR Book   3395 Page 1032 - 1035

I do hereby certify that the precise address of the Assigned Residence is:
PACIFIC UNION FINANCIAL, LLC, 1603 LBJ FREEWAY SUITE 500, FARMERS BRANCH, TX 75234

KAYLA SCHROEDER, VICE PRESIDENT

I hearby CERTIFY that this document is
recorded in the Recorder's Office of
Fayette County, Pennsylvania.

*Tracie L. Vargo*

**TRACIE L. VARGO
RECORDER OF DEEDS**

Page 2 of 2



| | OBE MERG |
|---|---|

# State of California
## Secretary of State

**FILED**
Secretary of State
State of California
FEB - 1 2019

### Certificate of Merger

(California Corporations Code sections
1113(g), 3203(g), 6019.1, 8019.1, 9640, 12540.1, 15911.14, 16915(b) and 17710.14)

**IMPORTANT — Read all Instructions before completing this form.**    *This Space For Filing Use Only*

| 1. NAME OF SURVIVING ENTITY | 2. TYPE OF ENTITY | 3. CA SECRETARY OF STATE FILE NUMBER | 4. JURISDICTION |
|---|---|---|---|
| Nationstar Mortgage LLC | LLC | 200109410005 | Delaware |

| 5. NAME OF DISAPPEARING ENTITY | 6. TYPE OF ENTITY | 7. CA SECRETARY OF STATE FILE NUMBER | 8. JURISDICTION |
|---|---|---|---|
| Pacific Union Financial, LLC | LLC | 200425310084 | California |

8. THE PRINCIPAL TERMS OF THE AGREEMENT OF MERGER WERE APPROVED BY A VOTE OF THE NUMBER OF INTERESTS OR SHARES OF EACH CLASS THAT EQUALED OR EXCEEDED THE VOTE REQUIRED. *(IF A VOTE WAS REQUIRED, SPECIFY THE CLASS AND THE NUMBER OF OUTSTANDING INTERESTS OF EACH CLASS ENTITLED TO VOTE ON THE MERGER AND THE PERCENTAGE VOTE REQUIRED OF EACH CLASS. ATTACH ADDITIONAL PAGES, IF NEEDED.)*

| SURVIVING ENTITY | | | DISAPPEARING ENTITY | | |
|---|---|---|---|---|---|
| CLASS AND NUMBER | AND | PERCENTAGE VOTE REQUIRED | CLASS AND NUMBER | AND | PERCENTAGE VOTE REQUIRED |
| 1 membership unit | | 100% | 1 membership unit | | 100% |

10. IF EQUITY SECURITIES OF A PARENT PARTY ARE TO BE ISSUED IN THE MERGER, CHECK THE APPLICABLE STATEMENT.

[✓] No vote of the shareholders of the parent party was required.    [ ] The required vote of the shareholders of the parent party was obtained.

11. IF THE SURVIVING ENTITY IS A DOMESTIC LIMITED LIABILITY COMPANY, LIMITED PARTNERSHIP, OR PARTNERSHIP, PROVIDE THE REQUISITE CHANGES (IF ANY) TO THE INFORMATION SET FORTH IN THE SURVIVING ENTITY'S ARTICLES OF ORGANIZATION, CERTIFICATE OF LIMITED PARTNERSHIP OR STATEMENT OF PARTNERSHIP AUTHORITY RESULTING FROM THE MERGER. ATTACH ADDITIONAL PAGES, IF NECESSARY.

12. IF A DISAPPEARING ENTITY IS A DOMESTIC LIMITED LIABILITY COMPANY, LIMITED PARTNERSHIP, OR PARTNERSHIP, AND THE SURVIVING ENTITY IS NOT A DOMESTIC ENTITY OF THE SAME TYPE, ENTER THE PRINCIPAL ADDRESS OF THE SURVIVING ENTITY.

| PRINCIPAL ADDRESS OF SURVIVING ENTITY | CITY AND STATE | ZIP CODE |
|---|---|---|
| 8950 Cypress Waters Blvd | Coppell, Texas | 75019 |

13. OTHER INFORMATION REQUIRED TO BE STATED IN THE CERTIFICATE OF MERGER BY THE LAWS UNDER WHICH EACH CONSTITUENT OTHER BUSINESS ENTITY IS ORGANIZED. ATTACH ADDITIONAL PAGES, IF NECESSARY.

| 14. STATUTORY OR OTHER BASIS UNDER WHICH A FOREIGN OTHER BUSINESS ENTITY IS AUTHORIZED TO EFFECT THE MERGER. | 15. FUTURE EFFECTIVE DATE, IF ANY | | |
|---|---|---|---|
| Section 264 of the General Corporations Law of the State of Delaware | (Month) | (Day) | (Year) |

16. ADDITIONAL INFORMATION SET FORTH ON ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE PART OF THIS CERTIFICATE.

17. I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT OF MY OWN KNOWLEDGE. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

| February 1, 2019 | Amar R. Patel, Manager, Nationstar Mortgage LLC |
|---|---|
| SIGNATURE OF AUTHORIZED PERSON FOR THE SURVIVING ENTITY    DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |

| | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |
|---|---|
| SIGNATURE OF AUTHORIZED PERSON FOR THE SURVIVING ENTITY    DATE | Karen L. Robb, Assistant Secretary of the Manager, Nationstar Mortgage LLC |

| February 1, 2019 | |
|---|---|
| SIGNATURE OF AUTHORIZED PERSON FOR THE DISAPPEARING ENTITY    DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |

| February 1, 2019 | Karen L. Robb, Manager |
|---|---|
| SIGNATURE OF AUTHORIZED PERSON FOR THE DISAPPEARING ENTITY    DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |

For an entity that is a business trust, real estate investment trust or an unincorporated association, set forth the provision of law or other basis for the authority of the person signing: —————————

| OBE MERGER-1 (REV 01/2016) | APPROVED BY SECRETARY OF STATE |
|---|---|

**Attachment A**

**AGREEMENT**
**OF**
**NATIONSTAR MORTGAGE LLC**
**(a Delaware limited liability company)**

Pursuant to the provisions of Sections 17710.17(f)(1), (2) and (3) of the California Corporations Code, Nationstar Mortgage LLC (the "Company"), a Delaware limited liability company, agrees that:

1.  The Company may be served in the State of California in a proceeding for the enforcement of an obligation of any constituent entity and in a proceeding to enforce the rights of any holder of a dissenting interest or dissenting shares in a constituent domestic limited liability company or domestic or other business entity.

2.  The Company irrevocably appoints the Secretary of State of the State of California as its agent for service of process, and the address to which process may be forwarded is 8950 Cypress Waters Blvd., Dallas, TX 75019, Attention: Matt Floyd, SVP, Associate General Counsel.

3.  The Company agrees that it will promptly pay the holder of any dissenting interest or dissenting share in a constituent domestic limited liability company or domestic other business entity the amount to which that person is entitled under California law.

**Fill in this information to identify the case:**

Debtor 1    Brian C. Carey f/k/a Brian C. Smithley

Debtor 2   
(Spouse, if filing)

United States Bankruptcy Court for the: Western District of Pennsylvania
                                                 (State)

Case number   20-20328/JAD

|  |
|---|
| **EXHIBIT C** |

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1 | Identify the Claim |
|---|---|

**1 Who is the current creditor?**

Nationstar Mortgage LLC d/b/a Mr. Cooper
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Nationstar Mortgage LLC d/b/a Mr. Cooper | Nationstar Mortgage LLC d/b/a Mr. Cooper |
| Name | Name |
| PO Box 619096 | PO Box 619094 |
| Number      Street | Number      Street |
| Dallas TX 75261-9741 | Dallas TX 75261-9741 |
| City     State     Zip Code | City     State     Zip Code |
| Contact phone (877) 343-5602 | Contact phone (877) 343-5602 |
| Contact email : _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**4. Does this claim amend one already filed?**

☒ No
☐ Yes.    Claim number on court claims registry (if known) _____

Filed on _____
              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes.    Who made the earlier filing? _____

| Part 2 | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: XXXXXX3830

**7. How much is the claim?**

$141,749.10

**Does this amount include interest or other charges?**

☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8 What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

Nature of property:

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: 203 River Avenue, Masontown, PA 15461

Basis for perfection: Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $141,749.10

Amount of the claim that is unsecured: $_____    (The sum of the secured and unsecured amounts should match the amount in line 7)

Amount necessary to cure any default as of the date of the petition: $23,227.08

Annual Interest Rate (when case was filed) 4.125%
☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11 .Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

| | | | |
|---|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check all that apply* | | **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.

$ _____

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment

---

**Part 3**   **Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent.  Bankruptcy Rule 3004

☐ I am a guarantor, surety, endorser, or other codebtor, Bankruptcy Rule 3005

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   _____3/6/2020_____
               MM  /  DD  / YYYY

_____/s/ Michael J. Clark_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Michael J. Clark, Esquire_____ |
| | First name      Middle name       Last name |
| Title | Attorney_____ |
| Company | Shapiro & DeNardo, LLC_____ |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 3600 Horizon Drive, Suite 150_____ |
| | Number       Street |
| | King of Prussia, PA 19406_____ |
| | City                  State      Zip Code |
| Contact Phone | (610) 278-6800_____       Email pabk@logs.com_____ |

# Mortgage Proof of Claim Attachment

**(12/15)**

If you file a claim secured by a security interest in the debtor's personal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Case number: 20-20328/JAD | Principal balance | $122,468.33 | Principal & interest due | $13,113.54 | Principal & Interest | $596.07 |
| Debtor 1 Brian C. Carey f/k/a Brian C. Smithley | Interest due | $9,663.05 | Prepetition fees due | $2,162.00 | Monthly Escrow | $287.32 |
| Debtor 2 | Fees, costs due | $2,162.00 | Escrow deficiency for funds advanced | $7,455.72 | Private mortgage insurance | $83.45 |
| Last 4 digits to identify  XXXXX3830 | Escrow deficiency for funds advanced | $7,455.72 | Projected escrow shortage | $495.82 | Total monthly payment | $966.84 |
| Creditor  Nationstar Mortgage LLC d/b/a Mr. Cooper | Less total funds on hand | $0.00 | Less funds on hand: | $0.00 | | |
| Servicer  Nationstar Mortgage LLC d/b/a Mr. Cooper | Total debt | $141,749.10 | Total prepetition arrearage | $23,227.08 | | |
| Fixed | | | | | | |
| Date interest/other: | | | | | | |
| Date accrual/daily | | | | | | |

Nationstar Mortgage LLC d/b/a Mr. Cooper services the loan on the property referenced in this proof of claim.  In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Nationstar Mortgage LLC d/b/a Mr. Cooper.

Noteholder, directly or through an agent, has possession of the promissory note.  The promissory note is either made payable to Noteholder or has been duly endorsed.  Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due | principal | H. Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/1/2018 | 879.60 | | | Monthly Mortgage Payment Due | 3/1/2018 | 879.60 | $174.49 | $421.58 | | 0.00 | | 122,642.82 | - | 556.71 | - | 0.00 |
| 3/2/2018 | | | | FHAMIP INS DISBURSED | 3/1/2018 | 879.60 | | | (84.95) | | | 122,642.82 | - | 471.76 | - | 0.00 |
| 3/22/2018 | | | | City Tax Disbursed | 3/1/2018 | 879.60 | | | (612.01) | | | 122,642.82 | - | (140.25) | - | 0.00 |
| 3/29/2018 | | | | Delinquent P&I Payment Due | 3/1/2018 | 1,475.67 | | | | | | 122,642.82 | - | (140.25) | - | 0.00 |
| 4/3/2018 | 596.07 | | | FHAMIP INS DISBURSED | 3/1/2018 | 1,475.67 | | | (84.95) | | | 122,642.82 | - | (225.20) | - | 0.00 |
| 4/17/2018 | | | 23.84 | ZZZZF-Late Charges | 4/1/2018 | 1,475.67 | | | | | | 122,642.82 | - | (225.20) | 23.84 | 0.00 |
| 4/17/2018 | | | (23.84) | NON CASH FEE ADJ | 4/1/2018 | 1,475.67 | | | | | | 122,642.82 | - | (225.20) | 0.00 | 0.00 |
| 5/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 2,071.74 | | | | | | 122,642.82 | - | (225.20) | 0.00 | 0.00 |
| 5/3/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 2,071.74 | | | (84.95) | | | 122,642.82 | - | (310.15) | 0.00 | 0.00 |
| 5/17/2018 | | | 23.84 | ZZZZF-Late Charges | 4/1/2018 | 2,071.74 | | | | | | 122,642.82 | - | (310.15) | 23.84 | 0.00 |
| 5/17/2018 | | | (23.84) | NON CASH FEE ADJ | 4/1/2018 | 2,071.74 | | | | | | 122,642.82 | - | (310.15) | 0.00 | 0.00 |
| 5/25/2018 | | $ 879.60 | | Payment | 3/1/2018 | 1,192.14 | | $283.53 | 283.53 | | | 122,642.82 | - | (26.62) | 0.00 | 0.00 |
| 6/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 1,788.21 | | | | | | 122,468.33 | - | (26.62) | 0.00 | 0.00 |
| 6/4/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 1,788.21 | | | (84.95) | | | 122,468.33 | - | (111.57) | 0.00 | 0.00 |
| 6/17/2018 | | | 23.84 | ZZZZF-Late Charges | 4/1/2018 | 1,788.21 | | | | | | 122,468.33 | - | (111.57) | 23.84 | 0.00 |
| 6/17/2018 | | | (23.84) | NON CASH FEE ADJ | 4/1/2018 | 1,788.21 | | | | | | 122,468.33 | - | (111.57) | 0.00 | 0.00 |
| 7/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 2,384.28 | | | | | | 122,468.33 | - | (111.57) | 0.00 | 0.00 |
| 7/3/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 2,384.28 | | | (84.95) | | | 122,468.33 | - | (196.52) | 0.00 | 0.00 |
| 7/17/2018 | | | | Delinquent P&I Payment Due | 4/1/2018 | 2,384.28 | | | | | | 122,468.33 | - | (196.52) | 0.00 | 0.00 |
| 8/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 2,980.35 | | | | | | 122,468.33 | - | (196.52) | 0.00 | 0.00 |
| 8/3/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 2,980.35 | | | (84.95) | | | 122,468.33 | - | (281.47) | 0.00 | 0.00 |
| 8/17/2018 | | | | Delinquent P&I Payment Due | 4/1/2018 | 2,980.35 | | | | | | 122,468.33 | - | (281.47) | 0.00 | 0.00 |
| 9/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 3,576.42 | | | | | | 122,468.33 | - | (281.47) | 0.00 | 0.00 |
| 9/5/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 3,576.42 | | | (84.95) | | | 122,468.33 | - | (366.42) | 0.00 | 0.00 |
| 9/17/2018 | | | | SCHOOL TAX DISBURSED | 4/1/2018 | 3,576.42 | | | (1,022.35) | | | 122,468.33 | - | (1,388.77) | 0.00 | 0.00 |
| 10/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 4,172.49 | | | | | | 122,468.33 | - | (1,388.77) | 0.00 | 0.00 |
| 10/30/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 4,172.49 | | | (84.95) | | | 122,468.33 | - | (1,473.72) | 0.00 | 0.00 |
| 11/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 4,172.49 | | | | | | 122,468.33 | - | (1,473.72) | 0.00 | 0.00 |
| 11/17/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 4,768.56 | | | (84.95) | | | 122,468.33 | - | (1,558.67) | 0.00 | 0.00 |
| 11/20/2018 | | | | HAZRD SFR DISBURSED | 4/1/2018 | 4,768.56 | | | | | | 122,468.33 | - | (1,558.67) | 0.00 | 0.00 |
| 11/17/2018 | | | 23.84 | ZZZZF-Late Charges | 4/1/2018 | 4,768.56 | | | | | | 122,468.33 | - | (1,558.67) | 23.84 | 0.00 |
| 11/17/2018 | | | (23.84) | NON CASH FEE ADJ | 4/1/2018 | 4,768.56 | | | | | | 122,468.33 | - | (1,558.67) | 0.00 | 0.00 |
| 12/1/2018 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 5,364.63 | | | | | | 122,468.33 | - | (1,558.67) | 0.00 | 0.00 |
| 12/4/2018 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 5,364.63 | | | (84.95) | | | 122,468.33 | - | (1,643.62) | 0.00 | 0.00 |
| 12/17/2018 | | | 23.84 | ZZZZF-Late Charges | 4/1/2018 | 5,364.63 | | | | | | 122,468.33 | - | (1,643.62) | 23.84 | 0.00 |
| 12/17/2018 | | | (23.84) | NON CASH FEE ADJ | 4/1/2018 | 5,364.63 | | | | | | 122,468.33 | - | (1,643.62) | 0.00 | 0.00 |
| 1/1/2019 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 5,960.70 | | | | | | 122,468.33 | - | (1,643.62) | 0.00 | 0.00 |
| 1/3/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 5,960.70 | | | (83.45) | | | 122,468.33 | - | (1,727.07) | 0.00 | 0.00 |
| 1/16/2019 | | | | HAZRD SFR DISBURSED | 4/1/2018 | 5,960.70 | | | (1,199.08) | | | 122,468.33 | - | (2,926.15) | 0.00 | 0.00 |
| 1/17/2019 | | | 23.84 | ZZZZF-Late Charges | 4/1/2018 | 5,960.70 | | | | | | 122,468.33 | - | (2,926.15) | 23.84 | 0.00 |
| 1/17/2019 | | | (23.84) | NON CASH FEE ADJ | 4/1/2018 | 5,960.70 | | | | | | 122,468.33 | - | (2,926.15) | 0.00 | 0.00 |
| 1/29/2019 | | | | Delinquent P&I Payment Due | 4/1/2018 | 5,960.70 | | | | | | 122,468.33 | - | (2,926.15) | 0.00 | 0.00 |
| 2/1/2019 | 596.07 | | | FHAMIP INS DISBURSED | 4/1/2018 | 6,556.77 | | | (83.45) | | | 122,468.33 | - | (3,009.60) | 0.00 | 0.00 |
| 2/7/2019 | | | 119.20 | Prop Insp | 4/1/2018 | 6,556.77 | | | | | | 122,468.33 | - | (3,009.60) | 119.20 | 0.00 |
| 2/27/2019 | | | 16.50 | Prop Insp | 4/1/2018 | 6,556.77 | | | | | | 122,468.33 | - | (3,009.60) | 135.70 | 0.00 |
| 2/28/2019 | | | 16.50 | Prop Insp | 4/1/2018 | 6,556.77 | | | | | | 122,468.33 | - | (3,009.60) | 152.20 | 0.00 |
| 2/28/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | 6,556.77 | | | (83.45) | | | 122,468.33 | - | (3,009.60) | 152.20 | 0.00 |
| 2/28/2019 | 596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | 7,152.84 | | | | | | 122,468.33 | - | (3,093.05) | 152.20 | 0.00 |
| 3/1/2019 | 596.07 | | | FHAMIP INS DISBURSED | 4/1/2018 | 7,152.84 | | | (83.45) | | | 122,468.33 | - | (3,093.05) | 152.20 | 0.00 |
| 3/15/2019 | | | 705.00 | FC Fee | 4/1/2018 | 7,152.84 | | | | | | 122,468.33 | - | (3,093.05) | 857.20 | 0.00 |

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/28/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $7,152.84 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(3,176.50) | $857.20 | $0.00 |
| 4/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $7,748.91 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(3,176.50) | $857.20 | $0.00 |
| 4/16/2019 | | | | BOROUGH TAX DISBURSED | 4/1/2018 | $7,748.91 | $ - | $ - | $(783.14) | $ - | $ - | $122,468.33 | $ - | $(3,959.64) | $857.20 | $0.00 |
| 4/26/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $7,748.91 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(4,043.09) | $857.20 | $0.00 |
| 5/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $8,344.98 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,043.09) | $857.20 | $0.00 |
| 5/29/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $8,344.98 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(4,126.54) | $857.20 | $0.00 |
| 6/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $8,941.05 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,126.54) | $857.20 | $0.00 |
| 6/8/2019 | | | | Service Fee | 4/1/2018 | $8,941.05 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,126.54) | $857.20 | $0.00 |
| 6/17/2019 | | | $250.00 | Service Fee | 4/1/2018 | $8,941.05 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,209.99) | $1,107.20 | $0.00 |
| 6/27/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $8,941.05 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(4,209.99) | $1,107.20 | $0.00 |
| 7/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $9,537.12 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,209.99) | $1,107.20 | $0.00 |
| 7/30/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $9,537.12 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(4,293.44) | $1,107.20 | $0.00 |
| 8/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $10,133.19 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,293.44) | $1,107.20 | $0.00 |
| 8/28/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $10,133.19 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(4,376.89) | $1,107.20 | $0.00 |
| 9/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $10,729.26 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(4,376.89) | $1,107.20 | $0.00 |
| 9/12/2019 | | | | SCHOOL TAX DISBURSED | 4/1/2018 | $10,729.26 | $ - | $ - | $(1,022.35) | $ - | $ - | $122,468.33 | $ - | $(5,399.24) | $1,107.20 | $0.00 |
| 9/27/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $11,325.33 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(5,482.69) | $1,107.20 | $0.00 |
| 10/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $11,325.33 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,482.69) | $1,107.20 | $0.00 |
| 10/30/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $11,325.33 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(5,566.14) | $1,107.20 | $0.00 |
| 11/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $11,921.40 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,566.14) | $1,107.20 | $0.00 |
| 11/25/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $11,921.40 | $ - | $ - | $(83.45) | $ - | $ - | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 11/29/2019 | | $20.00 | | PMT-MISC SUSP | 4/1/2018 | $11,921.40 | $ - | $ - | | $ - | $20.00 | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 11/29/2019 | | | | Delinquent P&I Payment Due | 4/1/2018 | $11,921.40 | $ - | $ - | | $ - | $20.00 | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 12/1/2019 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $12,517.47 | $ - | $ - | | $ - | $20.00 | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 12/22/2019 | | $(20.00) | | MISC ADJ | 4/1/2018 | $12,517.47 | $ - | $ - | | $ - | $20.00 | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 12/24/2019 | | $20.00 | | PMT-MISC SUSP | 4/1/2018 | $12,517.47 | $ - | $ - | | $ - | $20.00 | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 12/24/2019 | | $(20.00) | | MISC SUSP DISB | 4/1/2018 | $12,517.47 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,649.59) | $1,107.20 | $0.00 |
| 12/24/2019 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $12,517.47 | $ - | $ - | $(81.88) | $ - | $ - | $122,468.33 | $ - | $(5,731.47) | $1,107.20 | $0.00 |
| 1/1/2020 | $596.07 | | | Delinquent P&I Payment Due | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,731.47) | $1,107.20 | $0.00 |
| 1/14/2020 | | | $470.00 | FC Fee | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,731.47) | $1,577.20 | $0.00 |
| 1/14/2020 | | | $117.00 | Filing Costs | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,731.47) | $1,694.20 | $0.00 |
| 1/14/2020 | | | $150.00 | Publication | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(5,731.47) | $1,844.20 | $0.00 |
| 1/17/2020 | | | | HAZARD SFR DISBURSED | 4/1/2018 | $13,113.54 | $ - | $ - | $(1,642.37) | $ - | $ - | $122,468.33 | $ - | $(7,373.84) | $1,844.20 | $0.00 |
| 1/23/2020 | | | $470.00 | FC Fee | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(7,373.84) | $2,314.20 | $0.00 |
| 1/23/2020 | | | $2,000.00 | SHERIFF COSTS-Deposit | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(7,373.84) | $4,314.20 | $0.00 |
| 1/29/2020 | | | | FHAMIP INS DISBURSED | 4/1/2018 | $13,113.54 | $ - | $ - | $(81.88) | $ - | $ - | $122,468.33 | $ - | $(7,455.72) | $4,314.20 | $0.00 |
| 1/29/2020 | | | $(119.20) | Late Charges Waived | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(7,455.72) | $4,195.00 | $0.00 |
| 1/29/2020 | | | $(33.00) | Prop Insp-Non Claimable in PA State | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(7,455.72) | $4,162.00 | $0.00 |
| 1/29/2020 | | | $(2,000.00) | SHERIFF COSTS-Deposit | 4/1/2018 | $13,113.54 | $ - | $ - | | $ - | $ - | $122,468.33 | $ - | $(7,455.72) | $2,162.00 | $0.00 |
| | | | | | | $13,113.54 | | | | | $ - | $122,468.33 | $ - | $(7,455.72) | $2,162.00 | $0.00 |
| | | | | | | $13,113.54 | | | | | $ - | $122,468.33 | $ - | $(7,455.72) | $2,162.00 | $0.00 |

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Brian C. Carey** |
| | First Name — Middle Name — Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name — Middle Name — Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | |

**EXHIBIT D**

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property                                        12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
■ Yes. Where is the property?

| 1.1 | **What is the property?** Check all that apply | |
|---|---|---|

**203 River Avenue**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Masontown      PA      15461-0000**
City          State      ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$126,000.00** | **$126,000.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Fayette**
County

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

**Residence, a 3 bedroom, 2 bath, stone house w/2 car detached garage on .18 acre lot. Current market value assessment of $97,800. Purchased for $126,000 in March 2016.**

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here...........................................................=>

| **$126,000.00** |
|---|

**Part 2:**   Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    **Brian C. Carey**                                                     Case number *(if known)* _____

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Toyota** |
|---|---|---|
| | Model: | **Scion XB** |
| | Year: | **2005** |
| | Approximate mileage: | **149,673** |

Other information:

**Title is unencumbered. Vehicle is in poor condition due to damaged front end from hitting deer.**
**Location: 231 Hilltop, Nemacolin PA 15351**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$500.00** | **$500.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................=>

**$500.00**

| **Part 3:** | **Describe Your Personal and  Household Items** |
|---|---|

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

   **1/2 interest w/estranged wife in 7 rooms of furniture, appliances, household goods, including a fully equipped kitchen, furnished living room, furnished dining room, 3 furnished bedrooms and a garage w/refrigerator, table, microwave, stove, hutch, table & chairs, couch, clock, 2 recliners, 3 beds, dressers, desk, various tools and a lawn mower, w/no one item exceeding the limit.  Total value of $2,000.  Debtor's 1/2 interest is $1,000.**
   **Location: 203 River Avenue, Masontown PA 15461**

   **$1,000.00**

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

   **1/2 interest w/wife in 3 TV's and various electronics worth $800. Debtor's 1/2 interest is $400..**
   **Location: 203 River Avenue, Masontown PA 15461**

   **$400.00**

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    **Brian C. Carey**                                    Case number *(if known)*

■ Yes. Describe.....

| | |
|---|---|
| 1/2 interest w/wife in children's book collection and various decorative pictures worth $50.  Debtor's 1/2 interest is $25.<br>Location: 203 River Avenue, Masontown PA 15461 | $25.00 |

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

    ■ No
    ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

    ☐ No
    ■ Yes. Describe.....

| | |
|---|---|
| **Clothing**<br>**Location: 231 Hilltop, Nemacolin PA 15351** | $200.00 |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

    ☐ No
    ■ Yes. Describe.....

| | |
|---|---|
| **Watch, wedding band**<br>**Location: 231 Hilltop, Nemacolin PA 15351** | $100.00 |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses

    ☐ No
    ■ Yes. Describe.....

| | |
|---|---|
| **Mixed breed dog w/no monetary value.**<br>**Location: 203 River Avenue, Masontown PA 15461** | $0.00 |

14. **Any other personal and household items you did not already list, including any health aids you did not list**

    ■ No
    ☐ Yes. Give specific information.....

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ........................................................................

   | |
   |---|
   | $1,725.00 |

**Part 4:**  Describe Your Financial Assets

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own?<br>Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

    ☐ No
    ■ Yes.................................................................................................

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor 1 | Brian C. Carey | | Case number *(if known)* | |

Cash on hand
Location: 231
Hilltop,
Nemacolin PA
15351                                                                                          $130.00

---

17. **Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
   institutions. If you have multiple accounts with the same institution, list each.

   ☐ No
   ☑ Yes........................                                    Institution name:

| | 17.1. | **Checking account** | **United Bank** | **$1.00** |

| | 17.2. | **Checking account** | **Pennsylvania State Employees Credit Union. Joint w/wife. Money is Debtor's.** | **$12.00** |

| | 17.3. | **Savings account** | **Pennsylvania State Employees Credit Union** | **$100.00** |

---

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

   ☑ No
   ☐ Yes.................              Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

   ☑ No
   ☐ Yes. Give specific information about them...................
                                   Name of entity:                            % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

   ☑ No
   ☐ Yes. Give specific information about them
                                   Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

   ☐ No
   ☑ Yes. List each account separately.
                                   Type of account:          Institution name:

| | | **Pension** | **SERS pension. Probationary period ends in August 2020.** | **$1,600.00** |

---

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

   ☑ No
   ☐ Yes. .....................              Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

   ☑ No
   ☐ Yes.............              Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

---

Official Form 106A/B                         Schedule A/B: Property                                    page 4

Debtor 1    **Brian C. Carey**                                        Case number *(if known)*_____

☐ No
☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......    _____

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
■ No
☐ Yes. Name the insurance company of each policy and list its value.

Company name:                              Beneficiary:                    Surrender or refund value:

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
■ No
☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
■ No
☐ Yes.  Give specific information..

Official Form 106A/B                    Schedule A/B: Property                    page 5

Debtor 1   **Brian C. Carey**                                        Case number *(if known)*

36.  **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
     for Part 4. Write that number here**................................................................................................................    | $1,843.00 |

---

**Part 5:**   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37.  **Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.

☐ Yes.  Go to line 38.

---

**Part 6:**   Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
              If you own or have an interest in farmland, list it in Part 1.

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes.  Go to line 47.

---

**Part 7:**       Describe All Property You Own or Have an Interest in That You Did Not List Above

53.  **Do you have other property of any kind you did not already list?**
     *Examples:* Season tickets, country club membership

☑ No

☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here**  ....................................    | $0.00 |

---

**Part 8:**   List the Totals of Each Part of this Form

55.  **Part 1: Total real estate, line 2** .........................................................................................    $126,000.00

56.  **Part 2: Total vehicles, line 5**                                              $500.00

57.  **Part 3: Total personal and household items, line 15**                       $1,725.00

58.  **Part 4: Total financial assets, line 36**                                   $1,843.00

59.  **Part 5: Total business-related property, line 45**                             $0.00

60.  **Part 6: Total farm- and fishing-related property, line 52**                    $0.00

61.  **Part 7: Total other property not listed, line 54**                    +        $0.00

62.  **Total personal property.** Add lines 56 through 61...            $4,068.00    Copy personal property total        $4,068.00

63.  **Total of all property on Schedule A/B.** Add line 55 + line 62                | $130,068.00 |

---

Official Form 106A/B                                 Schedule A/B: Property                                        page 6

**PRINT INQUIRY** | **EXHIBIT E** | Close Window | Click Here to Print this Page

| 20-20328JAD | BRIAN C. CAREY | | 203 RIVER AVENUE • • MASONTOWN • PA • 15461 | $1,795.00 MO | Bar Date(s): | 4/8/2020 (has passed) 7/27/2020 (has passed) |
|---|---|---|---|---|---|---|
| | | | | | Confirmed: | 3/4/2020 |
| | Trustee: Ronda J. Winnecour | | Attorney: DANIEL R WHITE ESQ | | Case Status: | ACTIVE |

## Debtor Pay Schedules

| Start Date | Number Periods | Amount | How Often | Who's Paying | Order Date | Action |
|---|---|---|---|---|---|---|
| 2/1/2020 | 6.00 | $1,360.00 | MONTHLY | SCI FAYETTE | 1/30/2020 | None |
| 8/1/2020 | 31.00 | $1,601.00 | MONTHLY | SCI FAYETTE | 8/12/2020 | None |
| 3/1/2023 | 8.00 | $1,795.00 | MONTHLY | SCI FAYETTE | 2/27/2023 | None |
| 11/1/2023 | end of plan | $1,795.00 | MONTHLY | BRIAN C. CAREY | | None |

### Forgive Information

| Date | Amount | Description |
|---|---|---|
| 2/29/2020 | $730.00 | CONF OE 3-4-2020 |
| 7/31/2020 | ($760.00) | CONF OE 8-12-20 |
| 2/28/2023 | $3,231.00 | CONF OE 2/27/23 |

### Payments Expected for Step 1:

| Period | Start Date | End Date | Payment Amount Expected | Total |
|---|---|---|---|---|
| 1 | 2/1/2020 | 2/29/2020 | $1,360.00 | $1,360.00 |
| 2 | 3/1/2020 | 3/31/2020 | $1,360.00 | $2,720.00 |
| 3 | 4/1/2020 | 4/30/2020 | $1,360.00 | $4,080.00 |
| 4 | 5/1/2020 | 5/31/2020 | $1,360.00 | $5,440.00 |
| 5 | 6/1/2020 | 6/30/2020 | $1,360.00 | $6,800.00 |
| 6 | 7/1/2020 | 7/31/2020 | $1,360.00 | $8,160.00 |
| Total | | | | $8,160.00 |

### Payments Expected for Step 2:

| Period | Start Date | End Date | Payment Amount Expected | Total |
|---|---|---|---|---|
| 1 | 8/1/2020 | 8/31/2020 | $1,601.00 | $1,601.00 |
| 2 | 9/1/2020 | 9/30/2020 | $1,601.00 | $3,202.00 |
| 3 | 10/1/2020 | 10/31/2020 | $1,601.00 | $4,803.00 |
| 4 | 11/1/2020 | 11/30/2020 | $1,601.00 | $6,404.00 |
| 5 | 12/1/2020 | 12/31/2020 | $1,601.00 | $8,005.00 |
| 6 | 1/1/2021 | 1/31/2021 | $1,601.00 | $9,606.00 |
| 7 | 2/1/2021 | 2/28/2021 | $1,601.00 | $11,207.00 |
| 8 | 3/1/2021 | 3/31/2021 | $1,601.00 | $12,808.00 |
| 9 | 4/1/2021 | 4/30/2021 | $1,601.00 | $14,409.00 |
| 10 | 5/1/2021 | 5/31/2021 | $1,601.00 | $16,010.00 |
| 11 | 6/1/2021 | 6/30/2021 | $1,601.00 | $17,611.00 |
| 12 | 7/1/2021 | 7/31/2021 | $1,601.00 | $19,212.00 |
| 13 | 8/1/2021 | 8/31/2021 | $1,601.00 | $20,813.00 |
| 14 | 9/1/2021 | 9/30/2021 | $1,601.00 | $22,414.00 |
| 15 | 10/1/2021 | 10/31/2021 | $1,601.00 | $24,015.00 |
| 16 | 11/1/2021 | 11/30/2021 | $1,601.00 | $25,616.00 |
| 17 | 12/1/2021 | 12/31/2021 | $1,601.00 | $27,217.00 |
| 18 | 1/1/2022 | 1/31/2022 | $1,601.00 | $28,818.00 |
| 19 | 2/1/2022 | 2/28/2022 | $1,601.00 | $30,419.00 |
| 20 | 3/1/2022 | 3/31/2022 | $1,601.00 | $32,020.00 |
| 21 | 4/1/2022 | 4/30/2022 | $1,601.00 | $33,621.00 |
| 22 | 5/1/2022 | 5/31/2022 | $1,601.00 | $35,222.00 |
| 23 | 6/1/2022 | 6/30/2022 | $1,601.00 | $36,823.00 |
| 24 | 7/1/2022 | 7/31/2022 | $1,601.00 | $38,424.00 |
| 25 | 8/1/2022 | 8/31/2022 | $1,601.00 | $40,025.00 |
| 26 | 9/1/2022 | 9/30/2022 | $1,601.00 | $41,626.00 |
| 27 | 10/1/2022 | 10/31/2022 | $1,601.00 | $43,227.00 |
| 28 | 11/1/2022 | 11/30/2022 | $1,601.00 | $44,828.00 |
| 29 | 12/1/2022 | 12/31/2022 | $1,601.00 | $46,429.00 |
| 30 | 1/1/2023 | 1/31/2023 | $1,601.00 | $48,030.00 |
| 31 | 2/1/2023 | 2/28/2023 | $1,601.00 | $49,631.00 |
| Total | | | | $49,631.00 |

Payments Expected for Step 3:

| Period | Start Date | End Date | Payment Amount Expected | Total |
|--------|-----------|----------|------------------------|-------|
| 1 | 3/1/2023 | 3/31/2023 | $1,795.00 | $1,795.00 |
| 2 | 4/1/2023 | 4/30/2023 | $1,795.00 | $3,590.00 |
| 3 | 5/1/2023 | 5/31/2023 | $1,795.00 | $5,385.00 |
| 4 | 6/1/2023 | 6/30/2023 | $1,795.00 | $7,180.00 |
| 5 | 7/1/2023 | 7/31/2023 | $1,795.00 | $8,975.00 |
| 6 | 8/1/2023 | 8/31/2023 | $1,795.00 | $10,770.00 |
| 7 | 9/1/2023 | 9/30/2023 | $1,795.00 | $12,565.00 |
| 8 | 10/1/2023 | 10/31/2023 | $1,795.00 | $14,360.00 |
| Total | | | | $14,360.00 |

Payments Expected for Step 4:

| Period | Start Date | End Date | Payment Amount Expected | Total |
|--------|-----------|----------|------------------------|-------|
| 1 | 11/1/2023 | 11/30/2023 | $1,795.00 | $1,795.00 |
| 2 | 12/1/2023 | 12/31/2023 | $1,795.00 | $3,590.00 |
| 3 | 1/1/2024 | 1/31/2024 | $1,795.00 | $5,385.00 |
| 4 | 2/1/2024 | 2/29/2024 | $1,795.00 | $7,180.00 |
| 5 | 3/1/2024 | 3/31/2024 | $1,795.00 | $8,975.00 |
| 6 | 4/1/2024 | 4/30/2024 | $1,795.00 | $10,770.00 |
| 7 | 5/1/2024 | 5/31/2024 | $1,795.00 | $12,565.00 |
| 8 | 6/1/2024 | 6/30/2024 | $1,795.00 | $14,360.00 |
| 9 | 7/1/2024 | 7/31/2024 | $1,795.00 | $16,155.00 |
| 10 | 8/1/2024 | 8/31/2024 | $1,795.00 | $17,950.00 |
| 11 | 9/1/2024 | 9/30/2024 | $1,795.00 | $19,745.00 |
| 12 | 10/1/2024 | 10/31/2024 | $1,795.00 | $21,540.00 |
| 13 | 11/1/2024 | 11/30/2024 | $1,795.00 | $23,335.00 |
| 14 | 12/1/2024 | 12/31/2024 | $1,795.00 | $25,130.00 |
| 15 | 1/1/2025 | 1/31/2025 | $1,795.00 | $26,925.00 |
| 16 | 2/1/2025 | 2/28/2025 | $1,795.00 | $28,720.00 |
| 17 | 3/1/2025 | 3/31/2025 | $1,795.00 | $30,515.00 |
| 18 | 4/1/2025 | 4/30/2025 | $1,795.00 | $32,310.00 |
| 19 | 5/1/2025 | 5/31/2025 | $1,795.00 | $34,105.00 |
| 20 | 6/1/2025 | 6/30/2025 | $1,795.00 | $35,900.00 |
| 21 | 7/1/2025 | 7/31/2025 | $1,795.00 | $37,695.00 |
| 22 | 8/1/2025 | 8/31/2025 | $1,795.00 | $39,490.00 |
| 23 | 9/1/2025 | 9/30/2025 | $1,795.00 | $41,285.00 |
| 24 | 10/1/2025 | 10/31/2025 | $1,795.00 | $43,080.00 |
| 25 | 11/1/2025 | 11/30/2025 | $1,795.00 | $44,875.00 |
| 26 | 12/1/2025 | 12/31/2025 | $1,795.00 | $46,670.00 |
| 27 | 1/1/2026 | 1/31/2026 | $1,795.00 | $48,465.00 |
| 28 | 2/1/2026 | 2/28/2026 | $1,795.00 | $50,260.00 |
| 29 | 3/1/2026 | 3/31/2026 | $1,795.00 | $52,055.00 |
| 30 | 4/1/2026 | 4/30/2026 | $1,795.00 | $53,850.00 |
| 31 | 5/1/2026 | 5/31/2026 | $1,795.00 | $55,645.00 |
| Total | | | | $55,645.00 |

Breakdown for Combined Schedules

| Period | Date (Month/Year) | Payment Due | Payment Received | Forgive Amount | Amount Due |
|--------|------------------|-------------|------------------|----------------|------------|
| 1 | 2/2020 | $1,360.00 | $630.00 | $730.00 (CONF OE 3-4-2020) | $0.00 |
| 2 | 3/2020 | $1,360.00 | $1,890.00 | | ($530.00) |
| 3 | 4/2020 | $1,360.00 | $1,260.00 | | ($430.00) |
| 4 | 5/2020 | $1,360.00 | $1,260.00 | | ($330.00) |
| 5 | 6/2020 | $1,360.00 | $1,260.00 | | ($230.00) |
| 6 | 7/2020 | $1,360.00 | $1,890.00 | ($760.00) (CONF OE 8-12-20) | $0.00 |
| 7 | 8/2020 | $1,601.00 | $1,260.00 | | $341.00 |
| 8 | 9/2020 | $1,601.00 | $1,480.00 | | $462.00 |
| 9 | 10/2020 | $1,601.00 | $1,480.00 | | $583.00 |
| 10 | 11/2020 | $1,601.00 | $1,480.00 | | $704.00 |
| 11 | 12/2020 | $1,601.00 | $1,480.00 | | $825.00 |
| 12 | 1/2021 | $1,601.00 | $1,480.00 | | $946.00 |
| 13 | 2/2021 | $1,601.00 | $2,220.00 | | $327.00 |
| 14 | 3/2021 | $1,601.00 | $1,480.00 | | $448.00 |
| 15 | 4/2021 | $1,601.00 | $1,480.00 | | $569.00 |
| 16 | 5/2021 | $1,601.00 | $1,480.00 | | $690.00 |

| 17 | 6/2021 | $1,601.00 | $2,220.00 | | $71.00 |
| 18 | 7/2021 | $1,601.00 | $1,480.00 | | $192.00 |
| 19 | 8/2021 | $1,601.00 | $1,480.00 | | $313.00 |
| 20 | 9/2021 | $1,601.00 | $1,480.00 | | $434.00 |
| 21 | 10/2021 | $1,601.00 | $1,480.00 | | $555.00 |
| 22 | 11/2021 | $1,601.00 | $2,220.00 | | ($64.00) |
| 23 | 12/2021 | $1,601.00 | $1,480.00 | | $57.00 |
| 24 | 1/2022 | $1,601.00 | $1,480.00 | | $178.00 |
| 25 | 2/2022 | $1,601.00 | $1,480.00 | | $299.00 |
| 26 | 3/2022 | $1,601.00 | $1,480.00 | | $420.00 |
| 27 | 4/2022 | $1,601.00 | $1,480.00 | | $541.00 |
| 28 | 5/2022 | $1,601.00 | $1,480.00 | | $662.00 |
| 29 | 6/2022 | $1,601.00 | $1,480.00 | | $783.00 |
| 30 | 7/2022 | $1,601.00 | $2,220.00 | | $164.00 |
| 31 | 8/2022 | $1,601.00 | $1,480.00 | | $285.00 |
| 32 | 9/2022 | $1,601.00 | | | $1,886.00 |
| 33 | 10/2022 | $1,601.00 | | | $3,487.00 |
| 34 | 11/2022 | $1,601.00 | $2,220.00 | | $2,868.00 |
| 35 | 12/2022 | $1,601.00 | $1,480.00 | | $2,989.00 |
| 36 | 1/2023 | $1,601.00 | $1,480.00 | | $3,110.00 |
| 37 | 2/2023 | $1,601.00 | $1,480.00 | $3,231.00 (CONF OE 2/27/23) | $0.00 |
| 38 | 3/2023 | $1,795.00 | $1,570.00 | | $225.00 |
| 39 | 4/2023 | $1,795.00 | $1,660.00 | | $360.00 |
| 40 | 5/2023 | $1,795.00 | $1,660.00 | | $495.00 |
| 41 | 6/2023 | $1,795.00 | $2,490.00 | | ($200.00) |
| 42 | 7/2023 | $1,795.00 | $1,660.00 | | ($65.00) |
| 43 | 8/2023 | $1,795.00 | $1,660.00 | | $70.00 |
| 44 | 9/2023 | $1,795.00 | $1,660.00 | | $205.00 |
| 45 | 10/2023 | $1,795.00 | $2,490.00 | | ($490.00) |
| 46 | 11/2023 | $1,795.00 | $1,660.00 | | ($355.00) |
| 47 | 12/2023 | $1,795.00 | $830.00 | | $610.00 |
| 48 | 1/2024 | $1,795.00 | $1,795.00 | | $610.00 |
| 49 | 2/2024 | $1,795.00 | $1,795.00 | | $610.00 |
| 50 | 3/2024 | $1,795.00 | $1,795.00 | | $610.00 |
| 51 | 4/2024 | $1,795.00 | | | $2,405.00 |
| 52 | 5/2024 | $1,795.00 | | | $4,200.00 |
| 53 | 6/2024 | $1,795.00 | | | $5,995.00 |

**Total Delinquent Amount: $5,995.00**



**Claim 1**

## NATIONSTAR MORTGAGE LLC**
**C/O RUSHMORE SERVICING**
**PO BOX 619094**
**DALLAS TX 75261**
**(877) 888-4623**

## CLAIM DETAIL

| | |
|---|---|
| Case Number | 2020328 |
| Creditor | NATIONSTAR MORTGAGE LLC** |
| Trustee's Claim Number | 1 |
| Court's Claim Number | 2 |
| Claim Type | D - MORTGAGE REGULAR PAYMENT (S) |
| Claim Filed Date | Friday, March 6, 2020 |
| Mortgage Due Date | |

## CLAIM AMOUNTS

| | |
|---|---|
| Claimed Amount | $0.00 |
| Scheduled Amount | $137,462.95 |
| Amount Paid Outside | $0.00 |
| Monthly Payment | $995.01 |
| Principal Owed | $0.00 |
| Principal Paid | $49,940.03 |
| Principal Due | $1,990.02 |
| Interest Rate | 0.00 |
| Interest Paid | $0.00 |
| Interest Due | $0.00 |
| Collateral Value | $0.00 |
| Collateral Description | 203 RIVER AVE|MASONTOWN PA 15461 |
| Limit | $60,885.14 |
| Plan Code | $0.00 |
| Percent Allowed | 100.00 |
| Months to Calculate | 2.00 |

## CLAIM FLAGS

| | |
|---|---|
| Payee Level | 22 |
| Comment | PMT/DECL*DK4PMT-LMT*BGN 2/20*FR NATIONSTAR-DOC 66 |
| Account Number | ███ |
| No Cost | |
| No Check | |
| Delete | |
| Reserve | |
| Stop Disbursement | |
| Continuing | Continuing Debt |
| Special | |

## CREDITOR INFORMATION

| | |
|---|---|
| Creditor Name | NATIONSTAR MORTGAGE LLC** |
| Address 1 | C/O RUSHMORE SERVICING |
| Address 2 | PO BOX 619094 |
| Address 3 | DALLAS TX |
| Zip Code | 75261-9741 |
| Contact Name | /POA 3/24=CK= |
| Phone Number | (877) 888-4623 |
| Creditor Number ShortCut | |

### PAYMENT HISTORY FOR CLAIM 1 – NATIONSTAR MORTGAGE LLC**

(Latest Payments First)

| Disb Date | Check Number | Payee Name | Type | Insurance- Prev. Cred- Amount |
|---|---|---|---|---|
| 3/26/2024 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 2/26/2024 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 1/26/2024 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,209.82 |
| 12/21/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $780.20 |
| 11/27/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 10/25/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 9/26/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 8/25/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 7/25/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 6/26/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 5/25/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |
| 4/25/2023 | ███ | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $995.01 |

| | Additional Names and Addresses | Date of Last Change |
|---|---|---|
| Payee: | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) ● PO BOX 619094 ● DALLAS ● TX ● 75261-9741 | 1/31/2020 |
| | RUSHMORE SERVICING ● PO BOX 619096 ● DALLAS ● TX ● 75261-9741 | 4/18/2024 |
| | NATIONSTAR MORTGAGE LLC** ● C/O RUSHMORE SERVICING ● DALLAS ● TX ● 75261-9741 | 4/18/2024 |
| Scheduled: | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) ● PO BOX 619094 ● DALLAS ● TX ● 75261-9741 | 1/31/2020 |
| | RUSHMORE SERVICING ● PO BOX 619096 ● DALLAS ● TX ● 75261-9741 | 4/18/2024 |
| Notice: | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) ● PO BOX 619094 ● DALLAS ● TX ● 75261-9741 | 1/31/2020 |
| | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER** ● ATTN BANKRUPTCY NOTICING ● DALLAS ● TX ● 75261-9741 | 3/9/2020 |
| | RUSHMORE SERVICING ● PO BOX 619096 ● DALLAS ● TX ● 75261-9741 | 4/18/2024 |
| Attorney for Creditor: | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) ● PO BOX 619094 ● DALLAS ● TX ● 75261-9741 | 1/31/2020 |
| | SHAPIRO & DENARDO LLC* ● 3600 HORIZON DR STE 150 ● KING OF PRUSSIA ● PA ● 19406-0000 | 2/11/2020 |
| | BROCK & SCOTT PLLC ● 302 FELLOWSHIP RD STE 130 ● MT | 12/6/2021 |

| Date | Payee | Description | Amount |
|---|---|---|---|
| 3/28/2023 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,286.28 |
| 2/23/2023 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $703.74 |
| 1/26/2023 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,360.75 |
| 12/22/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,407.48 |
| 11/23/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,407.48 |
| 9/27/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $718.54 |
| 8/24/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $978.85 |
| 7/26/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $978.85 |
| 6/27/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $978.85 |
| 5/25/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $978.85 |
| 4/26/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $978.85 |
| 3/25/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,239.16 |
| 2/23/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $718.54 |
| 1/26/2022 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $973.97 |
| 12/23/2021 | NATIONSTAR MORTGAGE | AMOUNTS DISBURSED TO CREDITOR | $973.97 |

| Payee | Date | | Date | Creditor | Description | Amount |
|---|---|---|---|---|---|---|
| LAUREL • NJ • 08054-0000 | | | | MR COOPER(*) | | |
| BROCK & SCOTT PLLC • 8757 RED OAK BLVD • CHARLOTTE • NC • 28217-0000 | 2/17/2023 | | 11/22/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $973.97 |
| BROCK & SCOTT PLLC* • 3825 FORRESTGATE DR • WINSTON-SALEM • NC • 27103-0000 | 7/10/2023 | | 10/25/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $973.97 |
| BROCK & SCOTT PLLC* • 3825 FORRESTGATE DR • WINSTON SALEM • NC • 27103-0000 | 7/10/2023 | | 9/24/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $973.97 |
| KML LAW GROUP PC* • 701 MARKET ST STE 5000 • PHILADELPHIA • PA • 19106-0000 | 8/8/2023 | | 8/26/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $973.97 |
| MANLEY DEAS KOCHALSKI LLC • PO BOX 165028 • COLUMBUS • OH • 43216-5028 | 1/9/2024 | | 7/26/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $973.97 |
| RUSHMORE SERVICING • PO BOX 619096 • DALLAS • TX • 75261-9741 | 4/18/2024 | | 6/25/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,142.54 |
| MANLEY DEAS KOCHALSKI LLC • PO BOX 165028 • COLUMBUS • OH • 43216-5028 | 4/18/2024 | | 5/25/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,383.80 |
| | | | 4/26/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,383.80 |
| | | | 4/22/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | CANCELLED CHECK TO CREDITOR/CONTINUING DEBT | ($966.84) |
| | | | 4/22/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | PREWRITTEN CHECK TO CREDITOR/CONTINUING DEBT | $966.84 |
| | | | 3/26/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $966.84 |
| | | | 2/22/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $966.84 |
| | | | 1/25/2021 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,118.61 |
| | | | 12/21/2020 | NATIONSTAR MORTGAGE LLC D/B/A | AMOUNTS DISBURSED TO CREDITOR | $1,099.50 |

## PAYEE FIELDS DESCRIPTIONS

**No Cost** — A "Y" in this field indicates the system will not calculate trustee fees on disbursements to this claim.

**No Check** — Code which indicates the claim should not be paid or will limit the amount the claim is paid. The valid options are as follows:

- **O** Indicates claim is to be paid outside the plan.
- **R** Indicates claim is to be paid at Real Estate Closing.
- **S** Indicates collateral will be surrendered.
- **X** Indicates claim has not been filed.
- **Y** General no check
- **1-9** Limits the disbursement to this number times the regular monthly payment

**Delete** — A "Y" in this field indicates the claim has been deleted from the plan without actually removing

the record. L in this field
indicates the claim is to be paid
per capita rather than pro rata.
This field is normally used for
adequate protection claims by
indicating an "A" in this field. An
"E" is used to flag this claim for
"Hard" reserve if using this
feature.

**Reserve**    Code indicating that
disbursements are to be
calculated for this claim but
reserve the funds rather than
paying them out. The valid
options are:

- **H**    Calculated
  disbursements are
  reserved until they meet
  or exceed the regular
  payment amount for the
  claim.
- **M**    Calculated
  disbursements are
  reserved for one
  disbursement.
- **Y**    Calculated
  disbursements are
  reserved indefinitely.
- **1-9**    Calculated
  disbursements are to be
  reserved for this number
  of disbursement cycles.
  This number will
  decrease by 1 each
  disbursement cycle.

**Stop**    Code which prevents the system
**Disbursement** from disbursing. However, the
system will disburse any
arrearage accumulated on this
claim. Normally a "Y" is used for
a generic stop disbursement.
The numbers 1-9 will cause the
system to not disbursement on
this claim for this number of
disbursement cycles. The
number will decrease each
disbursement cycle.

**Continuing**    A "Y" in this field indicates this
**Flag**    claim is a continuing debt such
as an ongoing mortgage
payment.

| Date | Creditor | Description | Amount |
|---|---|---|---|
| | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | | |
| 11/24/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,099.50 |
| 10/26/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $549.75 |
| 9/28/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $1,387.83 |
| 8/25/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $921.85 |
| 7/29/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $921.35 |
| 6/26/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $919.34 |
| 5/26/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $910.22 |
| 4/27/2020 | NATIONSTAR MORTGAGE LLC D/B/A MR COOPER(*) | AMOUNTS DISBURSED TO CREDITOR | $2,674.13 |

**Motion For Relief Information**
*Post-Petition Ledger*

**EXHIBIT F**

| Filed By: | | | | **Payment Changes** | | | |
|---|---|---|---|---|---|---|---|
| Case Number: | | From Date | To Date | Total Amount | P&I Total | Escrow Total | Interest Rate Change |
| Filing Date: | | | | | | | |
| Payments to POC: | | | | | | | |
| First Post Due Date: | | | | | | | |